# UNITED STATES DISTRICT COURT OF VIRGINIA
# FOR THE WESTERN DISTRICT OF VIRGINIA
# HARRISONBURG DIVISION

Brendon Frechette,

Plaintiff

V.

BLUE RIDGE HOSPICE,

Defendant

CLERK'S OFFICE U.S. DISTRICT. COURT
AT HARRISONBURG, VA
FILED

JUL 12 2024

LAURA A. AUSTIN, CLERK
BY: _____
DEPUTY CLERK

5:24-cv-00051

# COMPLAINT

BRENDON FRECHETTE, representing himself pro se, hereby files this Complaint against Blue Ridge Hospice and alleges as follows:

## 1. INTRODUCTION

1.1. This is a civil action for violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., and wrongful termination under Virginia law.

## 2. JURISDICTION AND VENUE

2.1. This Court has jurisdiction over the FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2.2. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2.3. Venue is proper in the Harrisonburg Division of the Western District of Virginia under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this division

## 3. PARTIES

3.1. The Plaintiff, Brendon Frechette, is a resident of Winchester, Virginia and was employed by Blue Ridge Hospice from February 21st, 2022 to July 15th, 2022.

3.2. The Defendant, Blue Ridge Hospice, is a non-profit organization with its principal place of business in Winchester, Virginia.

## 4. FACTUAL ALLEGATIONS

### 4.1. Beginning Employment History

4.1.1. The Plaintiff began employment with Blue Ridge Hospice on February 21, 2022, as a warehouse driver

4.1.2. The Plaintiff's initial responsibilities included loading and unloading donations, transporting items between locations, and assisting with warehouse organization.

4.1.3. Around his start date, the Plaintiff was informed the warehouse drivers receive one 30 minute paid break for every 8 hour shift they work.

4.1.4. While beginning to work in the warehouse, the Plaintiff is told it is okay for him to go to his personal vehicle parked on the premises during his break

### 4.2. FLSA Violations

4.2.1. On March 7th, between 8:30 am and 4:30 pm, the Plaintiff attended a scheduled orientation.

4.2.2.2 Managers began conducting the orientation and it was soon mentioned that hourly employees are not allowed to go to their personal vehicles during their breaks.

4.2.3. The Plaintiff mentions he was told something different and one of the managers responds by angrily proclaiming she knew what the policy was.

4.2.4. A manager says the warehouse will be contacted to clarify the issue

- 4.2.5. A manager at the warehouse enforces the policy not allowing warehouse drivers to their vehicles and also explicitly made it clear they were restricted to his office area during their breaks.

- 4.2.6. Due to safety concerns related to COVID-19, the Plaintiff stopped taking breaks but continued working through the designated break time.

- 4.2.7. This resulted in uncompensated work time for each shift, the exact amount of which will be determined through discovery.

- 4.2.8. The Plaintiff regularly worked overtime hours, and the uncompensated break time may have resulted in unpaid overtime.

- 4.2.9. The Defendant failed to maintain accurate records of the hours worked by the Plaintiff, as required by the FLSA.

- 4.2.10. The Defendant's failure to properly label, categorize, and compensate for all hours worked constitutes a violation of the FLSA.

### 4.3. Safety Concerns and Incidents

- 4.3.1. The Defendant fails to provide proper safety training for the Plaintiff's position as a warehouse driver.

- 4.3.2. The Plaintiff observed unsafe working conditions in the warehouse, including a pedestrian standing right next to a forklift with raised heavy material.

- 4.3.3. The Plaintiff reported these safety concerns to a manager at the warehouse, who dismissed them.

- 4.3.4. The Plaintiff was injured while moving furniture in a residential apartment, resulting in a visible bruise on the Plaintiff's forehead.

- 4.3.5. The Plaintiff reported the injury to a manager at the warehouse, who initially refused to file an official report, stating that no work would get done if every little thing was reported.

- 4.3.6. After persistent requests, the manager eventually filed an injury report.

## 4.4. Transfer to Thrift Shop and Pay Reduction

4.4.1. The Plaintiff was informed by a manager the Plaintiff would be transferred to a thrift shop position in Winchester, Virginia, with a two-week notice. Another manager was present.

4.4.2. The Plaintiff received no formal written documentation justifying the significant changes in position and compensation.

## 4.5. Transfer to Thrift Shop and Pay Reduction

4.5.1. The Plaintiff was transferred to the thrift Shop and his hourly pay was reduced from $16.85 to approximately $10.50.

4.5.2. The Plaintiff received no written documentation or explanation for the transfer and pay reduction.

4.5.3. The Plaintiff received no safety training or customer de-escalation training for the new position.

4.5.4. The Plaintiff began to be told by management at the thrift shop how important it is to not make price adjustments in front of customers.

4.5.5. The Plaintiff is required to attend a training mainly focusing on the store policy of not making price adjustments in front of customers at a location other than the thrift shop. This extended training did not include any safety component or training on how to de-escalate or handle an abusive customer

## 4.6. Direct Events Leading to Termination

4.6.1. On or about 07/12/2022, the Plaintiff was involved in a verbal altercation with a customer over pricing at the thrift shop.

4.6.2. The Plaintiff followed company policies by using the pricing chart in front of him, not making a price adjustment in front of a customer and offering to call a manager to de-escalate the situation.

4.6.3. After the customer affirmed he wanted to speak to a manager, the Plaintiff called for the on-duty manager.

4.6.4. The customer became aggressive, making the Plaintiff feel threatened.

4.6.5. The Plaintiff responded by telling the customer to "Get the hell out of my store."

4.6.6. The customer refused to leave the store.

4.6.7. The Plaintiff continued to make attempts to get the on duty manager to arrive.
4.6.8. The Plaintiff tells the customer he is being belligerent and that he will call the police if he doesn't leave.

4.6.9. The customer still refuses to leave the store and the Plaintiff continues to call for the on-duty manager.

4.6.10. The on-duty manager eventually arrived and enforced the price policy.

4.6.11. The Plaintiff was asked by management to document the incident in an email. The Plaintiff specifically writes in the email that the customer involved in the altercation was belligerent. The email is then forwarded to upper management.

4.6.12. On or about 07/12/2022, a manager from higher up in the organization conducted a private meeting with the Plaintiff, during which this manager says he saw the email that was sent. The Plaintiff then recounted the incident.

4.6.13. On 07/15/2022, the manager that conducted the private meeting and another manager terminated the Plaintiff citing the reason as the Plaintiff's comment to the customer

4.6.14. The Plaintiff received no written documentation of the termination.

# 5. LEGAL CLAIMS

## 5.1. COUNT 1

5.1.1. The Defendant willfully and knowingly violated the FLSA by failing to compensate Plaintiff for all hours worked, including overtime. This willful and knowing violation by the Defendant supports a 3-year statute of limitations for the FLSA claims, pursuant to 29 U.S.C. § 255(a)..

5.2. The wrongful termination is connected to the FLSA violations, supporting supplemental jurisdiction over the wrongful termination claim under 28 U.S.C. § 1367.

# 6. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays for against the Defendant as follows:

1. For compensatory damages is an amount proven at trial, but not to exceed $15,000,000.

2. For punitive damages as permitted by law, within the $15,000,000 total limit;

3. For costs of suit incurred herein;

4. For pre-judgment and post-judgement interest as allowed by law;

5. For such other and further relief as the Court may deem just and proper.

The total amount of monetary relief sought, including all damages, costs, and fees, shall not exceed $15,000,000.

## 7. DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff hereby demands a trial by jury on all issues so triable in this case.

DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

07/12/24

Respectfully submitted,

Brendon Frechette, Pro Se
2821 Broadview St., Winchester, VA 22601
Plaintiff, Pro Se

## 8. LEGAL CLAIMS

### 8.1. COUNT 1

8.1.1. The Defendant violated the FLSA by failing to compensate Plaintiff for all hours worked, including overtime.

8.2. The wrongful termination is connected to the FLSA violations, supporting supplemental jurisdiction.

## 9. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays for against the Defendant as follows:

6. For compensatory damages is an amount proven at trial, but not to exceed $15,000,000

7. For punitive damages as permitted by law, within the $15,000,000 total limit;

8. For costs of suit incurred herein;

9. For pre-judgment and post-judgement interest as allowed by law;

10. For such other and further relief as the Court may deem just and proper.

The total amount of monetary relief sought, including all damages, costs, and fees, shall not exceed $15,000,000.

## 10. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: [07/12/24]

Respectfully submitted

*Brendon Frechette*

Brendon Frechette, Pro Se

2821 Broadview St., Winchester, VA 22601

7276000328

brendonfrechette@hotmail.com