CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
November 13, 2024
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
    DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | | |
|---|---|---|
| Brendon Frechette, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:24-cv-00051 |
| | ) | |
| Blue Ridge Hospice, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

Plaintiff Brendon Frechette, proceeding *pro se*, brings this action against Defendant Blue Ridge Hospice,[1] his former employer, for alleged violations of the federal Fair Labor Standards Act ("FLSA") and for wrongful termination under Virginia law. In his amended complaint, Frechette alleges that Blue Ridge Hospice failed to comply with the FLSA's wage, overtime, and recordkeeping requirements during his employment, then wrongfully terminated him in violation of the public policy expressed by the Virginia Human Rights Act ("VHRA").

This matter is before the court on two motions: Blue Ridge Hospice's motion to dismiss the amended complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6) (Dkt. 7 [hereinafter "Mot. to Dismiss"]), and Frechette's motion for leave to file a second amended complaint, which would add factual allegations and several new claims (Dkt. 15 [hereinafter "Mot. for Leave"]). For the reasons outlined below, the court will grant Blue

---

[1] Blue Ridge Hospice informed the court that its legal name is Blue Ridge Hospice, Inc. (Dkt. 7 at 1.)

Ridge Hospice's motion to dismiss. It will dismiss Frechette's FLSA wages and overtime claim and wrongful termination claim without prejudice and dismiss his FLSA recordkeeping claim with prejudice. The court will deny Frechette's motion for leave to file a second amended complaint as futile.

## Background

### I.    Factual History

The following facts are taken from Frechette's amended complaint and are accepted as true when resolving Blue Ridge Hospice's motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Frechette, a resident of Winchester, Virginia, was employed by Blue Ridge Hospice from February 21, 2022, to July 15, 2022. (Amend. Compl. ¶ 3.1 (Dkt. 4).) Blue Ridge Hospice is a non-profit organization based in Winchester. (*Id.* ¶ 3.2.) Frechette first worked as a warehouse driver for the organization. (*Id.* ¶ 4.1.1.) In that role, he was responsible for loading and unloading donated items, transporting items between locations, and helping with warehouse organization. (*Id.* ¶ 4.1.2.)

Warehouse drivers for Blue Ridge Hospice "received one 30 minute paid break for every 8 hour shift they worked." (*Id.* ¶ 4.1.3.) Frechette recalls hearing during his first week on the job that it was "okay for him to go to his personal vehicle parked on the premises during his break." (*Id.* ¶ 4.1.4.) He "believes another warehouse driver . . . told him this." (*Id.*) But during a March 7, 2022 orientation that Frechette attended, managers said that hourly employees were *not* permitted to visit their personal vehicles during their breaks. (*Id.* ¶ 4.2.2.) According to Frechette, a manager "rebuked" him when he "mentioned he was told something

- 2 -

different" and informed him that she would contact the warehouse "to clarify the issue." (*Id.* ¶¶ 4.2.3–4.2.4.)

The following day, March 8, the warehouse manager enforced the policy prohibiting visits to personal vehicles during breaks and stated that employees "were restricted to [the manager's] small indoor office area during their breaks." (*Id.* ¶ 4.2.5.) Due to concerns with COVID-19 exposure, Frechette "determined he could not safely lower his mask to eat and drink during the breaks offered to him . . ., considering he would be restricted to a small, indoor room . . . which numerous unmasked people occupied throughout the day." (*Id.* ¶ 4.2.6.) As a result, Frechette "stopped taking the breaks" and instead "continued working . . . through the designated break time." (*Id.*) This, he alleges, "resulted in uncompensated work time for each shift." (*Id.*)

Frechette also asserts that Blue Ridge Hospice "failed to provide adequate safety training" for warehouse drivers. (*Id.* ¶ 4.3.1.) He mentions one specific observation that involved "a pedestrian standing right next to a forklift with raised heavy material" in a warehouse. (*Id.* ¶ 4.3.2.) According to Frechette, a warehouse manager responded dismissively when he reported his safety concerns. (*Id.* ¶ 4.3.3.) At some point during his time as a warehouse driver, Frechette suffered a bruised forehead when "furniture slipped and struck him on the head" while he worked with another warehouse driver to move furniture around Leesburg, Virginia. (*Id.* ¶ 4.3.4.) The exact date of this incident is unclear—Frechette states that it occurred "sometime between" February 21, 2022, and May 15, 2022. (*Id.*) Frechette reported the injury to the warehouse manager shortly after it occurred. (*Id.* ¶ 4.3.5.)

The manager initially "dismissed [the] injury as insignificant" but eventually filed an injury report after Frechette's "persistent requests." (*Id.* ¶¶ 4.3.5–4.3.6.)

On May 15, 2022, the warehouse manager notified Frechette that he "would be removed from [his] position as a warehouse driver." (*Id.* ¶ 4.4.1.) The manager gave Frechette the option to transfer to a position in a thrift shop run by Blue Ridge Hospice in Winchester. (*Id.*) Frechette received no written documentation explaining the transfer. (*Id.* ¶¶ 4.4.3, 4.5.2.) He transferred to the thrift shop position approximately three weeks later. (*Id.* ¶ 4.4.2.) The hourly wage for the thrift shop position was approximately $10.50, a decrease from his $16.85 hourly wage as a warehouse driver. (*Id.* ¶ 4.5.1.)

According to Frechette, the thrift shop's management emphasized that employees should not make price adjustments in front of customers. (*Id.* ¶ 4.5.4.) The policy prohibiting price adjustments was also the focus of a training session that took place in Front Royal, Virginia, at some point between May 16, 2022, and July 11, 2022. (*Id.* ¶ 4.5.5.) Frechette alleges that the session did not include any training on safety or "on how to de-escalate or handle an angry customer." (*Id.*)

While working at the thrift shop around July 12, 2022, Frechette was involved in a verbal altercation with a customer related to pricing. (*Id.* ¶ 4.6.1.) He alleges that he "followed company policies" by declining to make a price adjustment in front of the customer, "offered to call a manager in an attempt to de-escalate the situation," and then called the manager at the customer's request. (*Id.* ¶¶ 4.6.2–4.6.3.) At that point, the customer grew "very aggressive towards [him]" and "yelled at [Frechette] that he wasn't going to let [Frechette] overcharge him in a menacing, threatening tone." (*Id.* ¶ 4.6.4.) Frechette "responded by telling the

customer to 'Get the hell out of my store.'" (*Id.* ¶ 4.6.5.) The customer refused to leave, and the manager eventually arrived at Frechette's request and enforced the price policy. (*Id.* ¶¶ 4.6.6–4.6.8.)

The thrift shop's manager asked Frechette to document the incident in an email. (*Id.* ¶ 4.6.9.) Around July 13, 2022, after receiving Frechette's email, Blue Ridge Hospice's director of thrift operations met with him privately to question him about the incident. (*Id.* ¶ 4.6.10.) Frechette explained that he was following the policy of not making price adjustments in front of customers. (*Id.* ¶ 4.6.11.) According to Frechette, the director asked him "about a specific statement [he] made to a customer"—an apparent reference to his comment to "get the hell out of my store." (*Id.* ¶ 4.6.12.)

On July 15, 2022, Blue Ridge Hospice terminated Frechette's employment. (*Id.* ¶ 4.6.13.) The director of thrift operations and vice president of thrift operations cited his statement to the customer as the reason for his termination but did not provide any written documentation regarding the decision. (*Id.* ¶¶ 4.6.13–4.6.14.)

## II.    Procedural History

Frechette initiated this lawsuit against Blue Ridge Hospice on July 12, 2024. (*See* Dkt. 1.) He filed an amended complaint as a matter of course on July 29, 2024. (*See* Amend. Compl.) The amended complaint first alleges that Blue Ridge Hospice willfully violated the FLSA "by failing to compensate [him] for all hours worked, including overtime" and by failing to comply with the FLSA's recordkeeping requirements. (*Id.* ¶¶ 5.1.5–5.1.7.) It also alleges a claim for "wrongful termination in violation of the public policy articulated in the Virginia Human Rights Act (VHRA)." (*Id.* ¶¶ 1.1.)

On August 21, 2024, Blue Ridge Hospice moved under Rule 12(b)(6) to dismiss all claims in the amended complaint with prejudice. (Mot. to Dismiss at 1.) While the motion to dismiss was pending, Frechette moved for leave to amend and attached a proposed second amended complaint. (Dkts. 15, 15-1.) The proposed second amended complaint drops the claim for FLSA recordkeeping violations and the claim for wrongful termination based on the VHRA. It adds factual allegations to support Frechette's FLSA claim for overtime compensation, including a schedule of the regular and overtime hours he worked while employed by Blue Ridge Hospice. (Prop. Second Amend. Compl. ¶¶ 4.1–4.3 (Dkt. 15-1).) In addition, it alleges a new claim for retaliation under the FLSA, an amended common-law claim for wrongful termination, and new state-law claims for breach of contract, negligence, and "cumulative retaliatory action." (*Id.* ¶¶ 5.4.3, 6.1.1–6.4.3.)

Blue Ridge Hospice opposes the motion for leave. It argues that granting leave would be futile because none of the causes of action in the proposed second amended complaint states a plausible claim for relief under Rule 12(b)(6). (Def.'s Resp. in Opp'n to Pl.'s Mot. for Leave to File Second Amend. Compl. at 1 (Dkt. 17).)

## Motion to Dismiss

### I.    Standard of Review

Rule 12(b)(6) provides that a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). But to gain the benefit of that presumption, the plaintiff must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" unsupported by "further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

The court must liberally construe pleadings filed by a *pro se* party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The liberal construction rule "allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). That said, liberal construction "does not transform the court into an advocate" for *pro se* parties. *Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990). *Pro se* parties, like all litigants, must comply with the pleading requirements in the Federal Rules of Civil Procedure. *Bing v. Brivo Systems, LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

## II.    Analysis

As an initial matter, the court finds that Frechette has abandoned his wrongful termination claim based on the VHRA. (*See* Pl.'s Resp. to Mot. to Dismiss ¶ 3.4 (Dkt. 14)

[hereinafter "Pl.'s Resp."].)  In his response to the motion to dismiss, he concedes that "it would be extremely difficult to incorporate the VHRA into a legal theory for [his] wrongful termination claim" and explains that his proposed second amended complaint alleges a wrongful termination claim based on "other laws and legal principles."  (*Id.*)  Thus, the court will treat Blue Ridge Hospice's motion to dismiss the wrongful termination claim as unopposed and dismiss that claim without prejudice.[2]

That leaves Frechette's claims that Blue Ridge Hospice violated the FLSA by (1) "failing to compensate [him] for all hours worked, including overtime" and (2) failing to maintain accurate employment records.  (Amend. Compl. ¶¶ 5.1.5–5.1.6.)  Blue Ridge Hospice argues that neither claim alleges plausible grounds for relief under the FLSA.  It contends that Frechette fails to state a claim for unpaid wages or overtime because the amended complaint "confirms unequivocally that [Frechette] received a 30-minute *paid* break" and does not allege that Frechette was ever uncompensated for overtime work.  (Mot. to Dismiss at 1.)  Blue Ridge Hospice next argues that the FLSA recordkeeping claim fails as a matter of law because the statute does not create a private right of action for recordkeeping violations.  (*Id.* at 2.)  For

---

[2] Even if Frechette had not abandoned the wrongful termination claim based on the VHRA, the court would lack supplemental jurisdiction to hear it, as it does not arise from the same "common nucleus of operative fact" as his FLSA claims.  *White v. Cnty. of Newberry, S.C.*, 985 F.2d 168, 171 (4th Cir. 1993) (quoting *United Mineworkers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).  Frechette's wrongful termination claim does not satisfy that standard because it is "separately maintainable and determinable without any reference to the facts alleged or contentions stated in or with regard to the [FLSA] count."  *Hales v. Winn-Dixie Stores, Inc.*, 500 F.2d 836, 848 & n.12 (4th Cir. 1974).  His FLSA claims require proof of the hours Frechette worked, the compensation he received, and the employment records Blue Ridge Hospice kept. None of those facts is relevant to his wrongful termination claim, which focuses on the decision to transfer him to the thrift shop position and the ultimate decision to terminate his employment and does not rely on any facts related to Blue Ridge Hospice's break policy.  As this district has held, a "common nucleus of operative fact may not exist where an employer-employee relationship is the sole link between the state and federal claims."  *Riley v. Barringer*, 337 F. Supp. 3d 647, 652 (W.D. Va. 2018).

the reasons that follow, the court will dismiss the wages and overtime claim without prejudice and dismiss the recordkeeping claim with prejudice.[3]

## A. FLSA Claim for Unpaid Wages and Overtime

The FLSA requires covered employers to pay their employees a minimum hourly wage and provide overtime compensation when employees work more than 40 hours in a single workweek. 29 U.S.C. §§ 206(a), 207(a). An employee may bring a private right of action under the FLSA to recover unpaid minimum wages or overtime pay. *Id.* § 216(b).

In his amended complaint, Frechette alleges that he "regularly work[ed] through offered breaks and beyond scheduled hours without receiving proper compensation for all hours worked, including overtime." (Amend. Compl. ¶ 5.1.5; *see id.* ¶¶ 4.2.6–4.2.7.) Frechette argues that work he performed during the break periods should be "categorized separately and compensated in addition to any and all regular work hours." (Pl.'s Resp. ¶ 3.2.) In other words, he appears to argue that he was entitled to additional compensation for the 30-minute break period when he chose to work through it—and perhaps double-counting of the 30-minute period for purposes of determining his eligibility for overtime pay. He does not identify the specific or estimated number of uncompensated regular or overtime hours that he worked.

---

[3] Blue Ridge Hospice separately argues that Frechette's FLSA claims are time-barred because Frechette filed them more than two years after the alleged FLSA violations occurred. *See* 29 U.S.C. § 255(a). Frechette alleges that the FLSA violations were willful, which would trigger a longer, three-year statute of limitations. *See id.* The parties dispute whether the court should make an exception to the general rule that a plaintiff "does not need to allege specific facts to support an allegation that defendants willfully violated the FLSA for the application of a three-year statute of limitations at the motion to dismiss phase." *Farias v. Strickland Waterproofing Co. Inc.*, No. 3:20-cv-00076, 2021 WL 2272487, at *3 (W.D. Va. June 3, 2021) (quotation marks omitted). The court does not need to resolve that issue here, as Frechette's FLSA claims fail for other reasons.

These allegations do not state a plausible claim for relief under either the minimum wage or overtime provisions of the FLSA. With respect to the former, § 206 "provides that employers shall pay employees a minimum hourly wage for all 'hours worked.'" *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 363 (4th Cir. 2011) (citing 29 U.S.C. §§ 206, 207). Frechette does not allege that Blue Ridge Hospice's employees were uncompensated for the 30-minute break period. To the contrary, he acknowledges that he was informed the break periods were "paid break[s]." (Amend. Compl. ¶ 4.1.3). He points to no authority suggesting that § 206 requires the employer to double-compensate an employee in this scenario. While break time may count as compensable "hours worked" if the employee uses the time for their employer's benefit, *see Roy v. Cnty. of Lexington*, 141 F.3d 533, 545 (4th Cir. 1998), an employer satisfies its obligations under § 206 by paying the employee once for that time.

Nor does the amended complaint state a plausible claim for unpaid overtime wages. To avoid Rule 12(b)(6) dismissal of an overtime claim, a plaintiff "must do more than merely allege that they regularly worked in excess of forty hours per week without receiving overtime pay." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017). The claim "must provide sufficient detail about the length and frequency of [the plaintiff's] unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Id.* A plaintiff can provide such detail by "estimating the length of [an] average workweek during the applicable period and the average rate at which [the plaintiff] was paid, the amount of overtime wages [the plaintiff] believes she is owed, or any other facts that will permit the court to find plausibility." *Id.* (emphasis omitted); *see, e.g.*, *Kenney v. Palmer-Stuart Oil Co., Inc.*, No. 3:17-cv-00053, 2017 WL 4581800, at *2 (W.D. Va. Oct. 13, 2017) (holding that plaintiff sufficiently

pled a violation of the FLSA overtime pay requirements when he alleged that he worked an average of 42.5 hours per week but was paid for only 37.5 hours per week).

Even when construed liberally, Frechette's overtime claim does not clear this hurdle. His allegation that he "regularly worked overtime hours," (Amend. Compl. ¶ 4.2.7), is exactly the type of general allegation the Fourth Circuit has rejected as inadequate. *See Hall*, 846 F.3d at 777. The amended complaint contains no facts about Frechette's weekly work schedule that would "support a reasonable inference that [he] worked more than forty hours in a given week." *Id.* While Frechette suggests that discovery is necessary to identify "[t]he exact amount of uncompensated work time for each shift," (Amend. Compl. ¶ 5.1.9), he must allege *some* factual detail about his work schedule to state a claim for unpaid overtime. Without any, the claim does not withstand Rule 12(b)(6) scrutiny.

### B. FLSA Claim for Recordkeeping Violations

Frechette's FLSA recordkeeping claim appears to allege that Blue Ridge Hospice violated the requirements found in 29 U.S.C. § 211(c). In relevant part, that section provides that every employer subject to the FLSA "shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him." 29 U.S.C. § 211(c).

This claim fails as a matter of law because the FLSA does not provide a private right of action for violations of the recordkeeping requirements. *See Whatley v. Phillips*, 2:22-cv-03528, 2024 WL 2702556, at *4 (D.S.C. May 6, 2024); *Fenner v. Mayor & City Council of Baltimore*, No. 1:21-cv-2646, 2022 WL 2209064, at *5 (D. Md. June 21, 2022); *Mooney v. Advanced Bus. Equip.*, 1:20-cv-378, 2021 WL 1553821, at *2–3 (W.D.N.C. Apr. 20, 2021); *Buckner v. UPS*,

No. 5:09-cv-411, 2010 WL 2889586, at *5 (E.D.N.C. Jul. 21, 2010); *Barton v. Pantry, Inc.*, No. 1:04-cv-748, 2006 WL 1367421, at *3 (M.D.N.C. May 17, 2006). The FLSA creates a private right of action for violations of certain FLSA provisions (such as § 206 and § 207), which are enumerated in 29 U.S.C. § 216(b). Section 216(b) "does not allow employees to bring actions, either for civil penalties, damages, or injunctive relief, for violations of the FLSA's record-keeping provisions." *Barton*, 2006 WL 1367421, at *3. Accordingly, the court will dismiss this cause of action for failure to state a claim. Dismissal with prejudice is appropriate here because "it is clear that amendment would be futile in light of the fundamental deficiencies in plaintiff['s] theory of liability." *Cozzarelli v. Inspire Pharms.*, 549 F.3d 618, 630 (4th Cir. 2008).

## Motion for Leave to File Second Amended Complaint

Having addressed Blue Ridge Hospice's motion to dismiss Frechette's amended complaint, the court will turn to Frechette's motion for leave to file a second amended complaint. Frechette's proposed amendment adds factual allegations to support his FLSA wages claim, alleges a new claim for retaliation in violation of the FLSA, and includes a revised common-law claim for wrongful termination. It also appears to allege new claims for breach of contract, negligence, and "cumulative retaliatory action." Lastly, it drops the claim for violations of the FLSA's recordkeeping requirements and the wrongful termination claim based on the VHRA. Blue Ridge Hospice argues that the court should deny leave to amend as futile because the claims in the proposed second amended complaint all fail to state legally sufficient grounds for relief.

## I.    Standard of Review

Under Federal Rule of Civil Procedure 15, a plaintiff may amend their complaint "once as a matter of course." Fed. R. Civ. P. 15(a)(1). Where, as here, a plaintiff has previously filed an amended complaint, the plaintiff may amend again only "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* It should deny leave to amend "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (emphasis omitted) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). An amendment is futile when "the proposed amended complaint fails to satisfy the requirements of the federal rules." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (citation omitted); *see also In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) (stating that district courts "are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny.").

## II.    Analysis

### A. FLSA Wages and Overtime Claim

The proposed second amended complaint includes new facts to support Frechette's FLSA claim for unpaid overtime compensation, including the specific number of regular and overtime hours he worked during his time as a warehouse driver.[4] Frechette starts with his first workweek, February 21–26, 2022, during which he was allowed to take the 30-minute

---

[4] Frechette also identifies the number of regular and overtime hours he worked in the thrift shop. (Prop. Second Amend. Compl. ¶ 4.3.) He does not allege that Blue Ridge Hospice failed to compensate him properly during that period.

breaks in his personal vehicle.  He alleges that he "worked 37.5 regular work hours and 8 overtime hours" that week "and took five 30 minute, on-call, on-site paid breaks."  (Prop. Second Amend. Compl. ¶ 4.1(A).)  He states that Blue Ridge Hospice "properly compensated [him] for this first week of employment by correctly adding the 2.5 hours of break time the Plaintiff took to the Plaintiff's 37.5 regular work hours, thus compensating the Plaintiff for 40 regular work hours and 8 overtime hours."  (*Id.*)  He also states that he received an agreed-upon $150 "stipend" for working an extra day that week.  (*Id.*)

Frechette next enumerates the regular and overtime hours he worked after he began working through the 30-minute breaks.  He provides that information in two-week periods:

- February 27–March 12, 2022: "Plaintiff worked 80 regular work hours and .16 hours of overtime.  The Defendant compensated the Plaintiff for 80 regular work hours and .16 hours of overtime."

- March 13–26, 2022: "Plaintiff worked 80 regular work hours and 18.75 hours of overtime.  The Defendant compensated the Plaintiff for 80 regular work hours and 18.75 hours of overtime.  The Defendant also gave the Plaintiff an agreed upon $300 stipend for working an extra day."

- March 27–April 9, 2022: "Plaintiff worked 80 regular work hours and 1.66 hours of overtime.  The Defendant compensated the Plaintiff for 80 regular work hours and 1.66 hours of overtime."

- April 10–23, 2022: "Plaintiff worked 80 regular work hours and 2.67 hours of overtime.  The Defendant compensated the Plaintiff for 80 regular work hours and 2.67 hours of overtime."

(*Id.* ¶¶ 4.2(A)–(D).)  For each of those two-week periods, Frechette alleges that "the 5 hours of compensable time established by the Defendant that the Plaintiff was unjustly denied were not added to the Plaintiff's regular work hours.  Thus, the Defendant failed to compensate the Plaintiff for an additional 5 hours of overtime that the Plaintiff was entitled to for this two week period."  (*Id.* ¶¶ 4.2(C)–(D).)

These additional facts improve on the allegations in Frechette's earlier complaint, but they are not enough to survive Rule 12(b)(6) dismissal, even when construed liberally. Frechette does not allege that his decision to work during the break periods ever resulted in a "workweek longer than forty hours." 29 U.S.C. § 207(a)(1). Rather, the alleged facts confirm that the 30-minute paid break was a part of each eight-hour shift (and did not extend a shift to 8.5 hours). Frechette's summary of his first workweek explains that he was paid for 40 regular work hours, which consisted of 37.5 hours of work and 2.5 hours of paid breaks (presumably five 30-minute breaks). (Prop. Second Amend. Compl. ¶ 4.1(A).) He then indicates that the restrictive break policy increased his regular work hours from 37.5 to 40 per week, as he notes that he was paid for 80 regular work hours during each two-week period in which he worked through the breaks. (*Id.* ¶¶ 4.2(A)–(D).) These facts do not support an inference that Frechette ever worked more than 40 regular hours in a single workweek without receiving overtime compensation. To the contrary, Frechette acknowledges that he received overtime pay for any hours in excess of 40 per week. (*See id.*)

Although he does not identify any workweek in which he worked more than 40 hours without receiving overtime pay, Frechette again argues that Blue Ridge Hospice should have counted the unused break periods twice when determining his weekly hours worked. He contends that Blue Ridge Hospice "should have compensated [him] for the denied, missed breaks in addition to all [his] regular work hours" because the restrictive break policy "effectively extended the workday without proper compensation." (*Id.* ¶ 5.2.3–5.2.4.) But Frechette does not allege that Blue Ridge Hospice failed to pay him regular wages for the

unused break periods, and, as discussed above, the FLSA wage provisions do not require an employer to double-compensate an employee who works through a break period.[5]

Accordingly, the court concludes that the proposed amendments to Frechette's wages and overtime claim would be futile. It will deny Frechette's motion for leave to amend as to this claim.

### B. FLSA Retaliation Claim

The proposed second amended complaint includes a new claim for retaliation in violation of the FLSA. (*Id.* ¶ 5.4.2(D)). It alleges that Blue Ridge Hospice's enforcement of the restrictive break policy was a response to him speaking up during the March 7, 2022 orientation and "constitutes an adverse employment action" under 29 U.S.C. § 215(a)(3). (*Id.*)

The FLSA retaliation provision makes it unlawful for an employer to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3). To allege a *prima facie* claim, a plaintiff "must show that (1) he engaged in an activity protected by the FLSA; (2) he suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection

---

[5] Frechette recognizes that his FLSA wages claim raises a "novel argument." (Prop. Second Amend. Compl. ¶ 5.4.1.) He does not cite any case law or other authority interpreting the FLSA to support his argument. Instead, he cites two state-court decisions that interpreted state labor statutes to require employers to provide additional compensation when employees missed break periods <u>mandated by law</u>. (*Id.*); *see Naranjo v. Spectrum Sec. Servs., Inc.*, 509 P.3d 956, 958 (Cal. 2022) (addressing California statute that requires employers to provide employees an additional hour of pay as a "premium" if they unlawfully require employees to work through a meal or rest period); *Wash. State Nurses Assoc. v. Sacred Heart Med. Ctr.*, 287 P.3d 516, 517–18 (Wash. 2012) (holding that nurses were entitled to overtime pay for 10 minutes of every 15-minute rest period missed because Washington statute required a 10-minute rest period for every four hours worked). Frechette also refers to (unidentified) Colorado labor laws that mandate a 10-minute rest break for every four hours worked and treat a missed break as additional uncompensated time. (Prop. Second Amend. Compl. ¶ 5.4.1.) These authorities have little bearing on the proper interpretation of the FLSA's wage and overtime provisions, particularly because the FLSA does not require employers to offer meal breaks or compensate employees for such breaks in all cases. *See, e.g.*, Employer's Guide to Fair Labor Standards Act ¶ 630 (Jan. 2019) ("Nothing in the Fair Labor Standards Act (FLSA) *requires* employers to offer meal breaks or rest breaks, but the laws of many states do.").

exists between the employee's activity and the employer's adverse action." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1042 (4th Cir. 2020) (quoting *Darveau v. Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2008)).

The FLSA recognizes three different types of protected activity: (1) "filing any complaint," (2) "instituting or causing to be instituted any proceeding," or (3) "testifying or being about to testify in any such proceeding." *Minor v. Bostwick Labs., Inc.*, 669 F.3d 428, 433 (4th Cir. 2012) (cleaned up). Here, the sole question is whether Frechette's comments during the March 7, 2022 orientation qualify as a "complaint" under § 215(a)(3). While oral complaints to one's employer may suffice, *see Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011); *Minor*, 669 F.3d at 437, a complaint must give the employer "fair notice that a grievance has been lodged" to trigger the FLSA's protections. *Kasten*, 563 U.S. at 14. To provide fair notice, "a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.*

Even construed liberally, Frechette's comments to managers during the March 7 orientation do not meet this standard. Frechette alleges only that he reported having heard that "it was okay for [him] to go to [his] personal vehicle parked on the premises during [his] break." (Prop. Second Amend. Compl. ¶¶ 4.4.4, 4.5.3.) He does not suggest that he raised any concerns about the policy or otherwise suggested that it might run afoul of Blue Ridge Hospice's FLSA obligations. The facts do not support an inference that Frechette's comments provided reasonable notice that he was asserting his rights to compensation under the FLSA. *See Kasten*, 563 U.S. at 14.

Because Frechette does not sufficiently allege that he "filed any complaint" about the break policy, 29 U.S.C. § 215(a)(3), he fails to state a claim for retaliation under the FLSA. As such, the court will deny leave to amend as futile as to this claim.

## C. State-Law Claims

The proposed second amended complaint also includes several claims under Virginia law, including an amended common-law wrongful termination claim and new causes of action for breach of contract, negligence, and "cumulative retaliatory action." The court will address each proposed claim in turn.[6]

### 1. Wrongful Termination

Under Virginia law, an at-will employee may bring a common-law tort claim for wrongful termination "if the termination violates Virginia public policy as expressed in a Virginia statute." *Tattrie v. CEI-Roanoke, LLC*, No. 7:23-cv-079, 2023 WL 4186383, at *4 (W.D. Va. Jun. 26, 2023) (quoting *Hice v. Mazzella Lifting Techs., Inc.*, 589 F. Supp. 3d 539, 550 (E.D. Va. 2022)). This is known as a *Bowman* claim, based on the Supreme Court of Virginia decision that recognized the cause of action. *See Bowman v. State Bank of Keysville*, 331 S.E.2d 797, 801 (Va. 1985). A plaintiff may bring a *Bowman* claim only in one of three circumstances: (1) where "an employer violated a policy enabling the exercise of an employee's statutorily created right"; (2) where "the public policy violated by the employer was explicitly expressed

---

[6] The court could exercise supplemental jurisdiction over these proposed claims, which arise from the same "common nucleus of operative fact" as his FLSA claims. *White*, 985 F.2d at 171. The breach of contract, negligence, and retaliation claims rest at least in part on Blue Ridge Hospice's policy prohibiting him from taking breaks in his personal vehicle, which also serves as the key factual predicate for his FLSA wages claim. (*See* Prop. Second Amend. Compl. ¶ 5.4.3(C) (breach of contract); *id.* ¶ 6.2.1(A) (negligence); *id.* ¶ 6.3(A) (retaliation).) While the legal basis for the proposed amended wrongful termination claim is somewhat unclear, Frechette appears to argue that Blue Ridge Hospice's alleged negligence, retaliation, and breach of contract establish that his termination was unlawful. (See *id.* ¶ 6.1.3.) Because the court could exercise supplemental jurisdiction over those underlying claims, it could also exercise supplemental jurisdiction over the proposed amended wrongful termination claim.

- 18 -

in the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy"; or (3) "where the discharge was based on the employee's refusal to engage in a criminal act." *Rowan v. Tractor Supply Co.*, 559 S.E.2d 709, 710–11 (Va. 2002).

Frechette disclaims any reliance on *Bowman* when asserting his proposed amended claim for wrongful termination. He instead alleges "a novel (non-*Bowman*) claim" for wrongful termination "based on emerging public policy and breach of duty," (Prop. Second Amend. Compl. ¶ 6.1.1; *see id.* ¶ 6.1.4), and refers generally to a Virginia public policy "pertain[ing] to workplace violence, employees' rights, and employer responsibility." (*Id.* ¶¶ 6.1.1). Frechette argues that his termination "violated this emerging public policy on three bases: employer negligence, cumulative retaliatory action, and breach of duty of contract." (*Id.* ¶¶ 6.1.3–6.1.4.)

To the extent that Frechette alleges a claim for wrongful termination that does not rely on *Bowman*, the claim fails as a matter of law. The Supreme Court of Virginia has consistently explained that a *Bowman* claim is a "narrow exception" to the common-law rule of at-will employment. *Bowman*, 331 S.E.2d at 801; *see City of Va. Beach v. Harris*, 523 S.E.2d 239, 245 (Va. 2000). Frechette identifies no Virginia case law or other authority that might support a broader common-law cause of action for wrongful termination.

Frechette briefly suggests that the Virginia Occupational Safety and Health ("VOSH") Act, Va. Code Ann. § 40.1-51.1, supports his allegations of negligence underlying the wrongful termination claim. (Prop. Second Amend. Compl. ¶ 6.4.1.) Even if he intended to allege a *Bowman* claim based on the VOSH Act, that claim would fail as a matter of law. Under Virginia law, "statutes containing their own remedy cannot also support a *Bowman* claim." *Carmack v.*

*Virginia*, No. 1:18-cv-00031, 2019 WL 1510333, at \*13 (W.D. Va. Apr. 5, 2019) (collecting cases); *see also Sch. Bd. of City of Norfolk v. Giannoutsos*, 380 S.E.2d 647, 649 (Va. 1989) ("One of the basic principles of statutory construction is that where a statute creates a right and provides a remedy for the vindication of that right, then that remedy is exclusive unless the statute says otherwise.").  The VOSH Act creates a private right of action for employees who were discharged or faced discrimination "because [they] filed a safety or health complaint or . . . testified or otherwise acted to exercise rights under the safety and health provisions" of the statute. Va. Code Ann. §§ 40.1-51.2:1, 40.1-51.2:2.  Because the VOSH Act creates this private right of action, the public policy expressed by the statute cannot separately support a *Bowman* claim for wrongful termination here.  *See Eckstein v. Sonoco Prods. Co.*, No. 7:20-cv-435, 2020 WL 7212579, at \*4 (W.D. Va. Dec. 7, 2020); *Jenkins v. Heilig-Meyers Co.*, 57 Va. Cir. 448, 1998 WL 34060079, at \*2 (Va. Cir. Ct. 1998).  And aside from the VOSH Act, Frechette does not cite any other Virginia statute that expresses the broad "emerging public policy" he identifies. The court therefore will deny leave to amend his wrongful termination claim as futile.

2.  <u>Breach of Contract</u>

The proposed second amended complaint appears to allege two different theories of breach of contract.  It first alleges that the parties had an "implied contract" that covered "terms regarding workplace policies, including break times and employee treatment." (Prop. Second Amend. Compl. ¶ 5.4.3(A).)  It appears to assert that Blue Ridge Hospice breached

that implied contract by enforcing a more restrictive break policy after he spoke up at the orientation.[7]

Virginia courts recognize two types of implied contracts: implied-in-fact contracts and implied-in-law contracts. *Spectra-4, LLP v. Univest Comm. Realty, Inc.*, 772 S.E.2d 290, 293 (Va. 2015). "Implied-in-fact contracts are no different from express contracts except that, instead of 'all of the terms and conditions [being] expressed between the parties, . . . some of the terms and conditions are implied . . . from the conduct of the parties.'" *Id.* (quoting *Hendrickson v. Meredith*, 170 S.E. 602, 605 (Va. 1933)). The parties' conduct confirms "the typical requirements to form a contract are present, such as consideration and mutuality of assent." *Id.* at 295. Implied-in-law contracts, on the other hand, "establish liability 'from an implication of law that arises from the facts and circumstances, independent of agreement or presumed intention.'" *Id.* at 293–94 (quoting *Hendrickson*, 170 S.E. at 605). Here, the court will construe Frechette's claim to allege a breach of an implied-in-fact contract, based on his statement that the contract "was not solely based on written agreements but also encompassed the expectations and understandings that arise from the employer-employee relationship." (Prop. Second Amend. Compl. ¶ 5.4.3(A).)

Frechette does not state a plausible claim for breach of an implied-in-fact contract. He does not point to any course of conduct between the parties that would indicate Blue Ridge Hospice agreed to allow Frechette to take his 30-minute breaks outside the designated break

---

[7] Frechette alleges that these actions violated the "implied covenant"; he does not specifically allege a *breach* of an implied contract. (Prop. Second Amend. Compl. ¶ 5.4.3(C).) Because the same section of the proposed complaint alleges a breach of the implied covenant of good faith and fair dealing, (*see id.* ¶ 5.4.3(B)), it is not entirely clear that Frechette intended to allege a separate claim under an implied-contract theory. Mindful of its obligation to construe *pro se* pleadings liberally, the court will treat it as a separate cause of action.

room.  (*See id.* ¶ 5.4.3).  Frechette alleges only that he recalls a coworker telling him he could take the breaks in his personal vehicle around the time he started working as a warehouse driver.  (*Id.* ¶ 4.4.4.)  That one conversation does not indicate that Blue Ridge Hospice approved that arrangement—particularly when management later informed him that "hourly employees were not allowed to go to their personal vehicles during their breaks" and the warehouse manager enforced that restriction.  (*Id.* ¶¶ 4.4.4, 4.5.2–4.5.5.)  The facts alleged do not support a reasonable inference that Blue Ridge Hospice intended to allow Frechette to determine where he took the 30-minute breaks.  *See Doe v. Washington & Lee Univ.*, 439 F. Supp. 3d 784, 791 (W.D. Va. 2020) ("Without the intent to contract, a court cannot find a contract implied in fact" under Virginia law.)

Frechette separately alleges that Blue Ridge Hospice breached the implied covenant of good faith and fair dealing.  He asserts that Blue Ridge Hospice breached that duty by: (1) enforcing a more restrictive break policy after he spoke up at the orientation; (2) "creat[ing] an expectation" that employees would enforce the no-price-adjustments policy and then terminating him "for doing so"; and (3) "[f]ailing to provide adequate training or support for dealing with customer abuse, especially after creating a policy that had an ongoing history of leading to such abuse."  (Prop. Second Amend. Compl. ¶¶ 5.4.3(C), 6.4.3.)

Virginia law generally imposes an implied duty of good faith and fair dealing in common-law contracts.  *See, e.g.*, *Morris v. Wilmington Sav. Fund Soc'y*, 360 F. Supp. 3d 363, 369–70 (W.D. Va. 2018).  It is far less clear whether that duty extends to at-will employment arrangements.  Most courts to address the issue have held that Virginia law "does not recognize an implied covenant of good faith and fair dealing in the employment context." *Baradell v. Bd.*

*of Soc. Servs. Pittsylvania Cnty.*, 970 F. Supp. 489, 494 (W.D. Va. 1997); *see Firebaugh v. Gen. Elec. Co.*, No. 85–0763, 1987 WL 109079, at *3 (W.D. Va. 1987) (same), *aff'd*, 838 F.2d 1209 (4th Cir.1988); *see also Devnew v. Brown & Brown, Inc.*, 396 F. Supp. 2d 665, 671 (E.D. Va. 2005) ("Virginia law is decidedly straightforward on this matter: the Commonwealth does not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in employment contracts, and in at-will employment contracts in particular."); *Wright v. St. Charles Water Auth.*, 59 Va. Cir. 244, 2002 WL 31989105, at *2 (2002) ("A covenant of good faith and fair dealing will not be implied as a part of an at-will employment contract where the employer as well as the employee are at liberty to terminate the contract."); *Schryer v. VBR*, 25 Va. Cir. 464, 1991 WL 835295, at *3 (1991) (finding "no authority in Virginia for implying a covenant of good faith and fair dealing to an at will employment contract"). The court finds these decisions persuasive and concludes that Virginia law does not recognize an implied covenant of good faith and fair dealing in the at-will employment context.[8] Thus, this claim would fail as a matter of law, and granting leave to raise it would be futile.

---

[8] In one case, this district reached the opposite conclusion. *See RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-cv-00066, 2018 WL 4102256 (W.D. Va. Aug. 27, 2018). There, the court relied on the Supreme Court of Virginia's 1993 decision in *CaterCorp, Inc. v. Catering Concepts, Inc.*, 431 S.E.2d 277 (Va. 1993). In *CaterCorp*, the Supreme Court stated that an employer alleged a cognizable claim for an at-will employee's breach of employment duties that included the "duties of good faith and fair dealing." 431 S.E.2d at 282. This court does not read *CaterCorp* to establish that an employer owes an at-will employee an implied duty of good faith and fair dealing. There, the employer-plaintiff's complaint did not specifically allege a breach of the implied covenant, but rather stated a more general claim for breach of "employment, contractual, fiduciary, and other duties." *Id.* at 281. Critically, the employee-defendant *conceded* that he owed the employer "the duties of good faith and fair dealing." *Id.* at 282. The Supreme Court's analysis of the claim was sparse, and it addressed the alleged duties collectively rather than engaging in any independent analysis of the implied covenant. *See id.* at 282 (stating that the plaintiff's allegations were "sufficient to state a case for breach of the employment duties that defendants say exist"). Because the parties in *CaterCorp* did not dispute the issue, the Supreme Court did not squarely resolve whether an at-will employee may sue his or her employer for breach of the implied covenant.

3.  Negligence

The proposed second amended complaint includes a multifaceted negligence claim. Frechette alleges that Blue Ridge Hospice acted negligently by (1) "fail[ing] to provide [him] with essential, necessary training to safely perform [his] work" as a warehouse driver and thrift shop employee, (2) failing to respond to the safety concerns he raised to the warehouse manager, (3) "not providing reasonable and safe accommodations" in response to COVID-19 and "not remaining flexible in the implementation of [employee break] policies," and (4) failing to provide "appropriate support and resources" after he was "verbally attacked and threatened by the customer." (Prop. Second Amend. Compl. ¶ 6.2.1.)

To state a claim for negligence under Virginia law, a plaintiff must allege "a legal duty on the part of the defendant, breach of that duty, and a showing that such breach was the proximate cause of injury, resulting in damage to the plaintiff." *Blue Ridge Serv. Corp. of Va. v. Saxon Shoes, Inc.*, 624 S.E.2d 55, 62 (Va. 2006). The proposed second amended complaint does not allege all the necessary elements. Namely, it does not include sufficient facts to support a reasonable inference that Blue Ridge Hospice's breach of that duty proximately caused him injury. It contains just one conclusory allegation addressing causation or injury, which states that Frechette "sustained an injury in the form of a visible bruise on [his] forehead" "[d]ue to the lack of safety training." (Prop. Second Amend. Compl. ¶ 6.2.1(D).) But nothing in the proposed complaint indicates that the lack of adequate safety training had anything to do with that injury, which occurred when a piece of furniture slipped while Frechette and another warehouse manager were moving it. (*Id.* ¶ 4.6.4.)

None of Frechette's other factual allegations supports a reasonable inference that Blue Ridge Hospice's inattention to safety caused his injury. He states that he observed unsafe working conditions in a warehouse, "including a pedestrian standing next to a forklift with raised heavy material," (*Id.* ¶¶ 4.6.2–4.6.3), but he does not allege any relationship between that incident and his injury, which took place while he was moving furniture at a different location. Frechette also alleges that he raised "general concerns about the overall safety of the warehouse driver position," that the manager responded by claiming "there had only been one injury amongst the warehouse drivers," and that Frechette "later went on to find out differently by talking to the other warehouse drivers." (*Id.* ¶ 4.6.3.) This suggests that other drivers had been injured on the job, but, again, the proposed complaint contains no facts describing how the deficiencies in Blue Ridge Hospice's employee training contributed to those injuries. Without such facts, Frechette cannot state a plausible claim for negligence. And he does not even attempt to identify any injuries caused by the other forms of negligent conduct he alleges.

Accordingly, the court will also deny Frechette's motion for leave as futile with respect to this claim.

4. Retaliation

Lastly, the proposed second amended complaint includes a brief section titled "Cumulative Retaliatory Action." (*Id.* ¶ 6.3.) Frechette does not identify any legal basis for this claim, which asserts that Blue Ridge Hospice retaliated against him by (1) enforcing the restrictive break policy after he attempted to speak up at the orientation, (2) transferring him to the lower-paying thrift shop position shortly after he raised safety concerns, was injured,

and "had to persist" to file an injury report, and (3) terminating his employment because he "attempt[ed] to defend himself and oppose workplace violence." (*Id.*) The court has already addressed the alleged retaliation related to the break policy when resolving Frechette's FLSA retaliation claim. Frechette does not suggest that the other alleged forms of retaliation are actionable under any legal theory, so the court will deny this proposed amendment as futile.[9]

## Conclusion

For the reasons discussed above, the court will grant Blue Ridge Hospice's motion to dismiss the claims in Frechette's amended complaint (Dkt. 7). The court will dismiss the FLSA wages and overtime claim and the abandoned claim for wrongful termination under the VHRA without prejudice. It will dismiss the FLSA recordkeeping claim with prejudice because such a claim is not cognizable under the FLSA.

Because none of the claims in Frechette's proposed second amended complaint would withstand Rule 12(b)(6) scrutiny, the court will deny Frechette's motion for leave to file a second amended complaint (Dkt. 15) as futile. Frechette may move for leave to file a revised version of his proposed second amended complaint within 21 days of the date of the court's accompanying Order. If he does not file a motion for leave by that date, the court will dismiss the entire action with prejudice.

An appropriate Order shall accompany this Memorandum Opinion.

**ENTERED** this <u>13th</u> day of November, 2024.

---

[9] There is no indication that Frechette intended to allege a retaliation claim under the VOSH Act. Even if he did, he has not alleged that he satisfied the statutory requirement to exhaust administrative remedies before filing suit, so the claim would fail. *See* Va. Code Ann. § 40.1-51.2.2.

/s/ *Jasmine H. Yoon*

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE