CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
April 15, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| Brendon Frechette, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 5:24-cv-00051 |
| ) | |
| Blue Ridge Hospice, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

This matter is before the court on *pro se* Plaintiff Brendon Frechette's motion for leave to file a third amended complaint (Dkt. 20). Frechette filed this motion after this court granted Defendant Blue Ridge Hospice's[1] motion to dismiss his amended complaint and denied Frechette's prior motion for leave to amend as futile. Frechette's proposed third amended complaint adds allegations in support of his claim for unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. It also alleges new claims for intentional misrepresentation and breach of fiduciary duty under Virginia law. For the reasons outlined below, the court will deny Frechette's motion for leave to amend as futile and dismiss this action with prejudice.

**I.   Background**

This court's November 13, 2024 memorandum opinion summarizes the key facts related to Frechette's lawsuit, (*see* Mem. Op. at 2–5 (Dkt. 18)), and the court will not restate

---

[1] Blue Ridge Hospice informed the court that its legal name is Blue Ridge Hospice, Inc. (Dkt. 22 at 1.)

them all here.  Frechette was employed by Blue Ridge Hospice from February 21, 2022, to July 15, 2022, first as a warehouse driver and then as a thrift-store employee.  (Proposed Third Am. Compl. ¶¶ 3.1, 4.2.1, 4.10.1 (Dkt. 20-1).)  As a warehouse driver, he received one 30-minute paid break as part of every eight-hour shift he worked.  (*Id.* ¶ 4.2.2.)  Frechette alleges that Blue Ridge Hospice required employees to remain in a small office area during the 30-minute break periods, and that he chose to work through the breaks because he was uncomfortable sharing the small space with other employees due to the COVID-19 pandemic.  (*Id.* ¶¶ 4.7.5–4.7.7.)  Although Blue Ridge Hospice paid employees for the break periods, Frechette asserts that the organization was obligated to provide him with additional compensation when he worked through them.  (*See id.* ¶ 4.4.)

Frechette filed his original complaint against Blue Ridge Hospice on July 12, 2024, then filed an amended complaint as a matter of course on July 29, 2024.  His amended complaint alleged claims under the FLSA for unpaid wages and overtime and recordkeeping violations, as well as a claim for wrongful termination based on the Virginia Human Rights Act ("VHRA").  (Am. Compl. ¶¶ 1.1, 5.1.5–5.1.7 (Dkt. 4).)  Blue Ridge Hospice moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6).  (Dkt. 7.)  While the motion to dismiss was pending, Frechette moved for leave to file a second amended complaint.  (Dkt. 15.)  His proposed second amended complaint abandoned his FLSA recordkeeping claim and VHRA wrongful termination claim, added factual allegations to support his FLSA overtime claim, and alleged new causes of action for FLSA retaliation, wrongful termination in violation of Virginia public policy, breach of contract, negligence, and "cumulative retaliatory action."  (*See* Dkt. 15-1.)

On November 13, 2024, this court granted Blue Ridge Hospice's motion to dismiss the amended complaint and denied Frechette's motion for leave to amend as futile. (Dkts. 18, 19.) The court concluded that the amended complaint failed to state a FLSA claim for unpaid wages or overtime because (1) the FLSA does not require employers to double-compensate employees who work through paid break periods and (2) the amended complaint failed to allege sufficient facts to show that Frechette worked uncompensated overtime hours. (Mem. Op. at 9–11.) The court dismissed the FLSA wages and overtime claim and the abandoned VHRA wrongful termination claim without prejudice. (*Id.* at 26.) It dismissed the FLSA recordkeeping claim with prejudice because the FLSA does not provide a private right of action for violations of the statute's recordkeeping requirements. (*Id.* at 11–12.)

The court held that Frechette's proposed second amended complaint also did not state any claim upon which relief could be granted. The proposed complaint alleged some additional facts related to the FLSA overtime claim—namely, that Blue Ridge Hospice failed to add the time Frechette worked through the paid breaks (2.5 hours per week) to his regular work hours for purposes of calculating overtime. (*See id.* at 13–14.) But because Frechette's amended overtime claim was still premised on an employer's supposed obligation under the FLSA to double-compensate employees for unused break periods, the court held that the claim failed as a matter of law. (*Id.* at 15–16.) When the paid break periods were counted only once, the proposed complaint did not show that Frechette ever worked more than 40 hours in a week without receiving overtime pay. (*Id.*) The court concluded that Frechette's proposed FLSA retaliation claim and proposed state-law claims also failed as a matter of law. (*Id.* at 16–

26.) It permitted Frechette to move for leave to file a revised version of his second amended complaint within 21 days of the November 13, 2024 order. (Dkt. 19.)

On December 3, 2024, Frechette moved for leave to file a "third" amended complaint. (Dkts. 20, 20-1.) His proposed third amended complaint purports to allege new facts in support of his FLSA overtime claim and adds new state-law claims for intentional misrepresentation and breach of fiduciary duty. Frechette has abandoned all other claims he previously had alleged. (*See* Dkt. 20 at 1.)

Blue Ridge Hospice filed a response opposing Frechette's motion for leave to amend on the grounds of futility and bad faith. (Def.'s Resp. in Opp'n to Pl.'s Mot. for Leave to File Third Am. Compl. at 1 (Dkt. 22).) Frechette did not file a reply.

## II.    Standard of Review

Under Federal Rule of Civil Procedure 15, a plaintiff may amend their complaint "once as a matter of course," provided they meet certain deadlines. Fed. R. Civ. P. 15(a)(1). Where, as here, a plaintiff previously has filed an amended complaint, the plaintiff may amend again "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* It should deny leave to amend "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)) (emphasis omitted). An amendment is futile when "the proposed amended complaint fails to satisfy the requirements of the federal rules." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (citation omitted). Thus,

courts "are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny." *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021).

To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). But to avoid Rule 12(b)(6) dismissal, the plaintiff must allege more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" unsupported by "further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

The court must liberally construe pleadings filed by a *pro se* party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The liberal construction rule "allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). At the same time, though, liberal construction "does not transform the court into an advocate" for *pro se* parties. *Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d 387, 391 (4th Cir. 1990). *Pro se* parties, like all litigants, must comply with the pleading requirements in the Federal Rules of Civil Procedure. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

### III.    Analysis

**A.  FLSA Overtime Claim**

The FLSA requires covered employers to pay their employees a minimum hourly wage and provide overtime compensation when employees work more than 40 hours in a single workweek.  29 U.S.C. §§ 206(a), 207(a).  Frechette's proposed third amended complaint includes some additional allegations regarding the uncompensated overtime hours he claims to have worked as a warehouse driver.  (*See* Proposed Third Am. Compl. ¶ 4.4.1–4.4.8.)  But his FLSA overtime claim continues to rest on his argument that Blue Ridge Hospice was required to count the unused break periods twice when calculating his weekly hours worked and double-compensate him for that time.  He asserts that:

> The Defendant established a compensation structure for the Plaintiff's position as a warehouse driver in which each 8-hour shift the Plaintiff worked included a 30-minute compensable break. For each 8-hour shift the Plaintiff worked between February 27th, 2022 and April, 23rd, 2022 the Defendant's own policies and actions compensated the Plaintiff for the 30-minute compensable break time but not the extra 30 minutes of regular work that Plaintiff performed as a result of not being allowed to safely take the offered breaks.

(*Id.* ¶ 5.2.1.)  Frechette alleges that Blue Ridge Hospice should have paid him 2.5 hours of overtime each week he worked through the daily break periods.  (*See id.* ¶¶ 4.4.1–4.4.8.)

This court previously rejected this exact argument.  In its November 13, 2024 memorandum opinion, it explained that the FLSA does not require an employer to double-compensate an employee who works through a paid break period or double-count the unused break time when calculating the employee's eligibility for overtime.  (*See* Mem. Op. at 10, 15–16.)  Frechette has not pointed to any authority that suggests the FLSA imposes such obligations.  His proposed complaint continues to cite a few state labor laws and related state-

court decisions that require employers to provide additional compensation when employees miss break periods mandated by law. (*See* Proposed Third Am. Compl. ¶¶ 5.6.1–5.6.3.) This court has already found that those authorities have little bearing on the interpretation of the FLSA's wage and overtime provisions, as the FLSA does not require employers to offer meal or rest breaks and does not mandate that employers always compensate employees for such breaks when they do offer them. (Mem. Op. at 16 n.5); *see Roy v. Cnty. of Lexington, S.C.*, 141 F.3d 533, 544–45 (4th Cir. 1998).

Frechette also argues that the Third Circuit's decision in *Smiley v. E.I. DuPont De Nemours & Co.*, 839 F.3d 325 (3d Cir. 2016), supports his position. This, too, is unpersuasive. In *Smiley*, the Third Circuit held that the FLSA prohibited an employer from subtracting paid meal break periods from compensable work time in order to avoid paying employees overtime. *See id.* at 327. *Smiley* indicates only that an employer who chooses to pay employees for break periods cannot offset the paid break periods from an employee's weekly work hours. Nothing in the Third Circuit's opinion suggests the FLSA requires an employer to double-count a paid break period when an employee works through it. Courts that have addressed this specific question have, like this court, held that the FLSA does not impose such a requirement. *See Nelson v. Waste Mgmt. of Alameda Cnty., Inc.*, No. C 99-0120, 2000 WL 868523, at *5 (N.D. Cal. June 19, 2000) (rejecting employees' FLSA overtime claim alleging that "on the days when [the employees] worked through the paid meal period, the thirty minutes of time for which they were entitled to be paid for being idle should be added to the time during which they were punched in at work"); *see also Gomez v. Mi Cocina Ltd.*, No. 3:14-CV-2934-P, 2015 WL 13852376, at *2 (N.D. Tex. Dec. 16, 2015) ("When employees work through a rest break, they

are entitled to compensation for that work at their normal or overtime rate. But they are not entitled to additional compensation for breaks not taken.").

Because Frechette's proposed amendments do not correct the deficiencies in his FLSA overtime claim, the court will deny leave to amend this claim as futile.

## B. Proposed State-Law Claims

Frechette's proposed third amended complaint alleges state-law causes of action for intentional misrepresentation and breach of fiduciary duty. Neither count states a plausible claim for relief, so the court will also deny these proposed amendments as futile.[2]

### 1. Intentional Misrepresentation

Frechette's intentional misrepresentation claim focuses on statements Blue Ridge Hospice has published regarding its organizational mission and core values. Frechette claims that Blue Ridge Hospice knew those public statements were false because the organization tolerated and fostered abusive work environments, failed to implement employee protection policies or support systems, "[p]rioritiz[ed] power and control over their low-wage hourly employees through strict, inflexible policies rather than prioritizing employee well-being and safety," and failed to properly report employee injuries. (Proposed Third Am. Compl. ¶ 6.2.2.)

---

[2] Blue Ridge Hospice argues that the court lacks supplemental jurisdiction over Frechette's state-law claims for intentional misrepresentation and breach of fiduciary duty because they do not arise from the same "common nucleus of operative fact" as his FLSA overtime claim. *See White v. Cnty. of Newberry, S.C.*, 985 F.2d 168, 171 (4th Cir. 1993) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). However, the two state-law claims appear to rely at least partially on Blue Ridge Hospice's policy for employee breaks, which is also relevant to Frechette's FLSA overtime claim. (*See* Proposed Third Am. Compl. ¶¶ 6.2.2, 6.3.4, 7.2.2, 7.3.2.) Thus, the court may exercise supplemental jurisdiction over these claims. Blue Ridge Hospice also argues that the two state-law claims are barred by the applicable statute of limitations and do not relate back to the date of Frechette's original complaint because they do not arise from the same "conduct, transaction, or occurrence" as the claims alleged in the original complaint. Fed. R. Civ. P. 15(c)(1)(B). This test for relation back mirrors the test for supplemental jurisdiction, *see Mayle v. Felix*, 545 U.S. 644, 664 (2005), so Frechette's new state-law claims appear to satisfy it. Ultimately, the court need not determine whether the claims would be time-barred, as they fail as a matter of law for other reasons.

Under Virginia law, the elements of intentional misrepresentation, or actual fraud, are "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Prospect Dev. Co. v. Bershader*, 515 S.E.2d 291, 297 (Va. 1999) (citation omitted). Virginia law also requires that the plaintiff's reliance on a representation of material fact be reasonable. *See Sweely Holdings, LLC v. SunTrust Bank*, 820 S.E.2d 596, 605 (Va. 2018). Federal Rule of Civil Procedure 9 provides that a plaintiff who alleges a fraud claim "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This heightened pleading standard requires a plaintiff to allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Fravel v. Ford Motor Co.*, 973 F. Supp. 2d 651, 656 (W.D. Va. 2013) (citation omitted).

Frechette identifies three allegedly false statements that Blue Ridge Hospice published. The first is the organization's mission statement, which reads: "Brightening life's journey with quality and compassionate care for all whom we are privileged to serve." (Proposed Third Am. Compl. ¶ 6.2.1.) The second says that Blue Ridge Hospice aims to "[s]upport[] anyone in our community affected by death, dying, and loss" and "[f]ocus on the quality of each person's life by addressing the mind, body and spirit." (*Id.*) The final statement, which Blue Ridge Hospice allegedly included in job postings, outlines the organization's core values:

> Our core values—dignity, integrity, teamwork, innovation, diversity, and excellence—not only reflect our commitment to our patients and families, but also represent our dedication to fostering a diverse and inclusive workplace culture that encourages staff to embrace creativity, work together, practice empathy and compassion with each other, and utilize professional growth opportunities.

(*Id.*)

None of these statements supports a claim for actual fraud. The first and second statements focus solely on Blue Ridge Hospice's commitment to the patients it serves. Even when those statements are viewed in the light most favorable to Frechette, a reasonable person could not construe them as establishing any specific commitments to Blue Ridge Hospice's employees. And because those two statements do not concern or address employment conditions, Blue Ridge Hospice's alleged mistreatment of employees would not render them false.

Nor can Frechette allege a plausible actual fraud claim based on Blue Ridge Hospice's core values statement. For one, he has not identified the time(s) Blue Ridge Hospice published that statement; he alleges only that the statement appears in "various job descriptions . . . across various job application websites." (*Id.*) These allegations fall short of the particularity standard, as it is unclear that Blue Ridge Hospice had published the core values statement at the time Frechette applied for a position. *See Fravel*, 973 F. Supp. 2d at 656.

Finally, even if Frechette had alleged more specific details about the core values statement, none of Blue Ridge Hospice's three public statements plausibly qualifies as an actionable representation of fact. Each statement is aspirational in nature and communicates the organization's goals for serving its clients and/or employees. While the core values statement expresses Blue Ridge Hospice's "dedication to fostering a diverse and inclusive workplace culture that encourages staff to embrace creativity, work together, practice empathy and compassion with each other, and utilize professional growth opportunities," (Proposed Third Am. Compl. ¶ 6.2.1), it does not constitute a representation as to how Blue Ridge Hospice enforces those objectives or how it addresses situations where managers or employees

fail to live up to them. Such a statement is too indefinite to support a fraud claim. *See, e.g.*, *In re Volkswagen AG Sec. Litig.*, 661 F. Supp. 3d 494, 518 (E.D. Va. 2023) (noting that "statements relating to 'healthy growth,' 'achieving our objectives' and 'competitive advantages'" are too indefinite to constitute an actionable representation of fact); *Carlucci v. Han*, 886 F. Supp. 2d 497, 522 (E.D. Va. 2012) ("Indefinite statements of corporate optimism, also known as 'puffery,' are generally non-actionable as they 'do not demonstrate falsity.'" (citation omitted)); *Lambert v. Downtown Garage, Inc.*, 553 S.E.2d 714, 717 (Va. 2001)) (explaining that "[c]ommendatory statements, trade talk, or puffing, do not constitute fraud because statements of this nature are generally regarded as mere expressions of opinion"). When "a defendant company has not provided any 'qualitative assurances' that a company policy is properly managed or enforced, courts have declined to find statements regarding the company policy to be materially misleading on the basis that the company policy is not effective." *Fanucchi v. Enviva Inc.*, No. 22-2844, 2024 WL 3302564, at *22 (D. Md. July 3, 2024) (emphasis omitted) (citing *In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 359–60 (S.D.N.Y. 2008)).

Because Frechette has not alleged with particularity that Blue Ridge Hospice made any misrepresentation of fact to its employees regarding how it would compensate overtime hours or any other specific condition of employment, the court concludes that his proposed intentional misrepresentation claim would be futile.

2. Breach of Fiduciary Duty

Frechette's proposed third amended complaint alleges that Blue Ridge Hospice, "as a not-for-profit, tax-exempt, community-based hospice organization and employer in Virginia, owed [him] a fiduciary duty to provide a safe working environment and to act in the best

interests of its mission." (Proposed Third Am. Compl. ¶ 7.2.1.) He claims that the organization breached that duty by failing to protect him from customer abuse, prioritizing "power and control" over employees, and failing to provide "compassionate care." (*Id.* ¶ 7.2.2.)

Under Virginia law, "[t]he elements of a claim for breach of fiduciary duty are (1) a fiduciary duty, (2) breach, and (3) damages resulting from the breach." *Dao v. Faustin*, 402 F. Supp. 3d 308, 322 (E.D. Va. 2019) (citation omitted); *see Carstensen v. Chrisland Corp.*, 442 S.E.2d 660, 666–68 (Va. 1994). A fiduciary relationship exists "when special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence." *H-B Ltd. P'ship v. Wimmer*, 257 S.E.2d 770, 773 (Va. 1979). A fiduciary duty "can arise by contractual provision, common law, or statute." *Adair v. EQT Prod. Co.*, 320 F.R.D. 379, 397 (W.D. Va. 2017). Virginia courts have recognized common-law fiduciary relationships between an attorney and client, an agent and principal, a trustee and beneficiary, a parent and child, siblings, and a caretaker and invalid. *See Dao*, 402 F. Supp. 3d at 322.

To the extent that Frechette alleges Blue Ridge Hospice owed him a fiduciary duty as his employer, his claim fails as a matter of law. While an employee owes a common-law fiduciary duty of loyalty to his or her employer, *see Williams v. Dominion Tech. Partners, L.L.C.*, 576 S.E.2d 752, 757 (Va. 2003), "Virginia courts have held that an employer owes no fiduciary duty to its employees," *Dao*, 402 F. Supp. 3d at 322; *see also Starks v. McCabe*, 49 Va. Cir. 554, 1998 WL 34180884, at *5 (Va. Cir. Ct. Oct. 28, 1998) ("The defendants . . . claim there is no general fiduciary duty from employer to employee. I agree."); *Augustin v. SecTek, Inc.*, 807 F.

Supp. 2d 519, 525 (E.D. Va. 2011) ("Virginia law has not recognized a fiduciary duty owed to an employee by an employer."); *Wynn v. Wachovia Bank, N.A.*, No. 3:09-CV-136, 2009 WL 1255464, at *5 (E.D. Va. May 6, 2009) ("[W]hile an employee owes a fiduciary duty to an employer, no corresponding duty is imposed on the employer."). Frechette does not cite any authority that suggests Blue Ridge Hospice's status as a "not-for-profit, tax-exempt, community-based hospice organization" provides an independent basis for holding that the organization owed him any fiduciary duty. The court therefore concludes that this proposed amendment, like the others, would be futile.

### IV.    Conclusion

For the reasons stated above, Frechette's motion for leave to file a third amended complaint (Dkt. 20) will be **DENIED** as futile, and this action will be **DISMISSED with prejudice**.

An appropriate Order will issue.

ENTERED this 15th day of April, 2025.

_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE